*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RICKELLE RADICK, as Conservator of the
ESTATE OF LUKE TAYLOR, a minor,

UNPUBLISHED
January 21, 2021

Plaintiff-Appellant,

v

No. 351200
Tuscola Circuit Court
LC No. 18-030447-NO

MISTY ROUSE and FRANK ROUSE,

Defendants-Appellees.

Before: JANSEN, P.J., and SERVITTO and RIORDAN, JJ.

PER CURIAM.

In this action brought under Michigan's dog-bite statute, MCL 257.351(1), plaintiff, Rickelle Radick, as conservator of the estate of Luke Taylor, a minor, appeals as of right the trial court's opinion and order granting summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) in favor of defendants, Misty Rouse and Frank Rouse, and denying summary disposition under MCR 2.116(I)(2) (opposing party entitled to judgment) in favor of plaintiff. We reverse and remand this case for the trial court to enter an order granting partial summary disposition in plaintiff's favor of the issue of liability.

## I. FACTS & PROCEDURAL HISTORY

On October 11, 2016, Retha Taylor was playing outside with her five-year-old grandson Luke. They were walking down the road and saw their neighbor, Misty, pull into her driveway. Luke asked Retha if they could say hello to the neighbors. Retha and Luke walked up the driveway and Retha saw Buddy, one of Misty's four dogs, by her car. Misty and her daughter got out of the car and Misty walked up the driveway to meet Retha and Luke. Misty and Retha greeted each other. Misty testified that Buddy, excited to see somebody new, then jumped onto Retha and she pushed him off.[1] Then, Buddy jerked, lunged forward, and bit Luke. Buddy knocked Luke down,

---

[1] However, Retha testified that Buddy did not come up to her before Luke, and that he never jumped on her.

bit him several times, and dragged him on the ground to a tree. Retha and Misty grabbed Buddy by his collar, his mouth open, and released Luke's arm. After Buddy let go of Luke, Frank secured Buddy inside the house and Retha carried Luke back to her house.

Three days later, Tuscola County Animal Control came to defendants' house. Frank testified that he and Misty told the animal control officer they had an electric fence[2] and that when Retha pushed Buddy off of her, she pushed him into the electric fence, and that Buddy bit Luke because he was reacting to the shock from the fence. Frank testified that the animal control officer said, " 'That sounds like a logical explanation for it.' "

Additionally, Misty testified that she thought Buddy got shocked by the electric fence before he grabbed Luke because he jerked before he lunged forward. Luke stated that Buddy looked angry because his face clenched before he bit him.

Plaintiff filed a complaint against defendants on September 20, 2018, alleging that defendants were liable for Luke's injuries under the Michigan dog-bite statute, MCL 287.351.[3] Defendants filed a motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact), arguing that plaintiff's claim under MCL 287.351 failed as a matter of law because Buddy was provoked because he was shocked by the invisible electric fence when he bit Luke. Plaintiff argued that defendants did not have a provocation defense because there was no genuine issue of material fact regarding whether Luke provoked Buddy. Plaintiff argued in the alternative that there was a genuine issue of material fact as to whether Buddy was actually provoked by the electric fence before he bit Luke. Plaintiff also claimed that plaintiff was entitled to summary disposition under MCR 2.116(I)(2), because MCL 287.351(1) imposes strict liability for dog bites unless the dog was provoked.

The trial court concluded that Buddy was provoked and therefore defendants had a defense for plaintiff's claim under MCL 287.351(1), and the court granted defendants' motion for summary disposition for that claim. The trial court noted that the dog-bite statute was clear and unambiguous, and concluded that plaintiff provided insufficient evidence that Buddy was not provoked by the invisible electric fence. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo matters of statutory interpretation, *Bank v Michigan Ed Ass'n-NEA*, 315 Mich App 496, 499; 892 NW2d 1 (2016), and a trial court's decision on a motion for summary disposition, *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition is appropriate under MCR 2.116(C)(10) when, "[e]xcept as to the amount of

---

[2] Defendants had an electric fence, which causes a dog collar to emit a shock of electricity if the dog walks too close to the fence line. All four of defendants' dogs wore collars, and were allowed to roam outside.

[3] Plaintiff also claimed that defendants were liable on a common-law-negligence theory. However, a stipulated order of dismissal was filed for the common-law-negligence claims and those claims are not at issue on appeal.

damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." Summary disposition may be granted under MCR 2.116(I)(2) "[i]f, after careful review of the evidence, it appears to the trial court that there is no genuine issue of material fact and the opposing party is entitled to judgment as a matter of law . . . ." *Cadillac Rubber & Plastics, Inc v Tubular Metal Sys, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 345512); slip op at 3. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). We consider affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion when reviewing a motion under MCR 2.116(C)(10). *Id*. Reasonable inferences from the record evidence should be considered in addition to the record evidence. *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 202; 544 NW2d 727 (1996).

## III. ANALYSIS

Plaintiff first argues that the trial court committed error requiring reversal when granting summary disposition to defendants because the term "provocation" in MCL 287.351(1) is limited to provocation of a dog by the victim of the dog bite, and not outside sources of provocation like defendants' electric fence. We agree.

MCL 287.351(1) states that "[i]f a dog bites a person, without provocation while the person is . . . lawfully on . . . the property of the owner of the dog, the owner of the dog shall be liable for any damages suffered by the person bitten, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness." MCL 287.351(1) imposes absolute liability on the dog owner "except where the dog bites after having been provoked." *Hill v Sacka*, 256 Mich App 443, 448; 666 NW2d 282 (2003). "Provocation" is "[t]he act of inciting another to do a particular deed. That which arouses, moves, calls forth, causes, or occasions." *Brans v Extrom*, 266 Mich App 216, 219; 701 NW2d 163 (2005) (quotation marks and citation omitted; alteration in original).

The scope of the term "provocation" in MCL 287.351(1) is a matter of statutory interpretation. See *Koivisto v Davis*, 277 Mich App 492, 496-497; 745 NW2d 824 (2008). The goal of statutory interpretation is "ascertain and give effect to the intent of the Legislature." *Id*. at 497. Statutory interpretation is not permitted "[i]f the plain and ordinary meaning of the language is clear," but it is permitted "if reasonable minds can differ regarding the meaning of the statute." *Brans*, 266 Mich App at 219. "Statutory language should be construed reasonably, in a manner that is consistent with the purpose of the legislation." *Koivisto*, 277 Mich App at 497.

We have acknowledged that the purpose behind MCL 287.351(1) "appears to be to hold the owner of a dog liable for bite injuries to a lawful victim who did not provoke the dog." *Id*. Moreover, in *Koivisto*, 277 Mich App at 499, we held that a provocation defense was unavailable when the victim responded in defense to an already provoked dog, but did not act to provoke the dog in the first place. *Id*. We reasoned that "[t]he 'provocation' defense assumes that the offending dog was not already in a provoked state or . . . a state of attack, and that *the victim did something to provoke the dog*." *Id*. (emphasis added).

It is undisputed that Luke did nothing to provoke Buddy. However, the trial court still permitted defendants assert a provocation defense because "the dog was otherwise provoked as

contemplated in the statute." The trial court's ruling was inconsistent with our interpretation of the dog-bite statute in *Koivisto*, 277 Mich App at 497, and therefore, we reverse the trial court's decision.

Defendants argue that our statutory interpretation in *Koivisto*, 277 Mich App at 297, is contrary to the plain language of the statute. Defendants cite *Brans*, 266 Mich App 216, wherein we noted that "provocation" is not defined in the dog-bite statute. We used *Black's Law Dictionary*'s definition of provocation: "The act of inciting another to do a particular deed. That which arouses, moves, calls forth, causes, or occasions." *Id*. at 219 (quotation marks and citation omitted; alteration omitted). In that case, the victim accidentally stepped on the defendants' dog's tail, and the dog bit her. *Id*. at 217. We held that the victim's unintentional act could constitute provocation because the definition of provocation does not account for the intent of the actor but only "the nature of the act itself and the relationship between that act and an outcome." *Id*.

*Brans* concerned the victim's unintentional act—not the act of another force, as in the case before us. Thus, *Brans* is factually distinguishable and does not compel a contrary outcome. Moreover, although the definition of "provocation" as stated in *Brans*, 266 Mich App at 219, does not specify that plaintiff must be the actor who incites another to do a particular act, as we stated in *Koivisto*, "[s]tatutory language should be construed reasonably, in a manner that is consistent with the purpose of the legislation," and we have expressly limited "provocation" to refer to the victim's conduct, *id*. ("a lawful victim who did not provoke the dog").

Defendants also argue that the Legislature could have specified that "provocation" only applies to plaintiff's conduct, and they contend that because it did not specify that "provocation" applies to plaintiff's conduct, it did not intend to limit the "provocation" to plaintiff's conduct. The Legislature did not specify in the dog-bite statute whether "provocation" must be by the victim. See MCL 287.351(a). In contrast, the dangerous animal statute specifies that provocation must be by the person who was bitten by the animal. MCL 287.321(a)(*ii*). However, we do not find this to be persuasive textual evidence of the Legislature's intent because the Legislature "legislates by legislating, not by doing nothing, not by keeping silent." *McCahan v Brennan*, 492 Mich 730, 749; 822 NW2d 747 (2012) (quotation marks and citation omitted).

Defendants further argue that plaintiff's interpretation of MCL 287.351(1) is contrary to the purpose of the statute, because it would allow liability even if a dog was actually provoked by another person, as long as that person was not the victim. However, those are not the facts before us and we decline to opine on them.

The trial court committed error requiring reversal when it concluded that MCL 287.351(1) permitted defendants to assert a provocation defense based on the allegations regarding defendants' electric fence.[4]

---

[4] Moreover, although Misty testified that she believed Buddy was shocked by the electric fence because he jerked and jumped backward just before biting Luke, Retha testified that she did not believe that Buddy was being shocked because "[Buddy] came right for [Luke]. He came right at

IV. CONCLUSION

The trial court erred when it concluded that defendants were entitled to summary disposition because Buddy was "provoked" by defendants' electric fence. Rather, because there is no dispute that Luke did nothing to provoke Buddy, plaintiff was entitled to summary disposition on the issue of liability pursuant to MCR 2.116(I)(2). Accordingly, we reverse the trial court's opinion and order granting summary disposition in favor of defendants and remand this case to the trial court to enter an order granting partial summary disposition in favor of plaintiff on the issue of liability. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Michael J. Riordan

---

him." Determining the truth of conflicting accounts is the business of the trier of fact. *White v Taylor Distrib Co*, 275 Mich App 615, 625; 739 NW2d 132 (2007), aff'd 482 Mich 136; 753 NW2d 591 (2008). Therefore, viewing the evidence in the light most favorable to plaintiff, there was a genuine issue of material fact regarding whether Buddy bit Luke because he was provoked by defendants' electric fence, and therefore, summary disposition was inappropriate.